NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11447

COMMONWEALTH  vs.  BRIAN LEE.[1]


Suffolk.     January 9, 2018. - May 15, 2018.

Present:  Gants, C.J., Budd, Cypher, & Kafker, JJ.


Homicide.  Constitutional Law, Jury, Fair trial.  Due Process of
    Law, Fair trial.  Jury and Jurors.  Practice, Criminal,
    Empanelment of jury, Jury and jurors, Capital case.



Indictment found and returned in the Superior Court
Department on January 23, 2007.

The case was tried before John C. Cratsley, J.


Elizabeth A. Billowitz for the defendant.
Julianne Campbell, Assistant District Attorney, for the
Commonwealth.


CYPHER, J.  The defendant, Brian Lee, appeals from his

conviction of murder in the first degree.  We affirm.

Background.  The victim was the defendant's father.  Ruth

Collins and her daughter, Caron Collins, had known the defendant

_____

[1] As is our custom, we refer to the defendant by the name
appearing in the indictment.

for several years at the time of the homicide.[2]  The defendant was friendly with Caron and had done housework for Ruth.  On October 28, 2006, Ruth saw the defendant walk behind her house carrying white garbage bags.  Soon after, the defendant left without any garbage bags.  Ruth and Caron checked the backyard for the garbage bags.  They found white garbage bags in a compost bin, and inside one of the garbage bags, they found a human head.  When police arrived, officers found two arms and two legs in the other garbage bags.

Ruth reported that she had seen the defendant carrying white garbage bags behind her house.  Police officers learned that the defendant's father had sought an abuse prevention order against him three days earlier.[3]  Officers went to the defendant's father's house to check on his safety.  In the house, officers found white garbage bags and a human torso in a plastic tub.  A fingerprint on the tub was later identified as the defendant's.

That same day, the defendant spoke with the police.  He told detectives that he had dismembered his father but not killed him.  The defendant also told police that he had thrown away his father's mattress, sheets, and blanket because they

---

[2] We refer to Ruth and Caron Collins by their first names to avoid confusion.

[3] The victim had also sought abuse prevention orders against the defendant in 2000 and 2004.

were covered in blood. The medical examiner testified that multiple blows to the head caused the victim's death. The defendant's medical expert testified that the victim's death was a homicide.

At trial, the defendant represented himself[4] and conferred with standby counsel. His theory of his defense was that the Commonwealth did not meet its burden of proof, the police and medical examiner altered evidence, and the victim was not the defendant's father.

Discussion. The sole issue the defendant raises on appeal is that the seating of a biased juror violated the defendant's right to a fair and impartial jury under the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. During jury empanelment, the judge informed each juror that participating in the trial would include viewing "graphic photos of body parts" and inquired about the impact of those photographs on each juror's impartiality. The defendant contends that prospective juror no. 226 "expressed doubts about his ability to be fair and impartial" and was seated on the jury nonetheless. The transcript contains the following exchange between the judge and prospective juror no. 226:

---

[4] The judge conducted a proper colloquy with the defendant about waiving his right to counsel.

> The judge: "All right. In this trial you will see some graphic photos of body parts, and the question is whether you think <u>that would affect your ability to be a fair and impartial juror</u>?"
>
> The juror: "Yes."
>
> The judge: "All right, do you have any other concerns about being a fair and impartial juror for a first degree murder prosecution?"
>
> The juror: "No, sir."

(Emphasis supplied.)

After the judge finished questioning the prospective juror, neither the defendant nor the Commonwealth opposed the juror's empanelment. Later, when discussing another juror, the defendant asked to challenge prospective juror no. 226. The judge declined to allow the defendant do so. The defendant argues that the seating of prospective juror no. 226 was structural error and seeks a new trial.

The defendant's argument and the Commonwealth's response were premised on the trial transcript. After hearing oral argument on this case, we acquired the transcriptionist's audio recordings and learned that the transcript was inaccurate.[5] The actual exchange between prospective juror no. 226 and the judge is as follows:

---

[5] After oral argument, the defendant also sought the transcriptionist's audio recordings and was erroneously informed that no recordings of the trial existed. Upon release of this opinion, we will ensure that the defendant will have access to all recordings of the trial.

> The judge: "You will see in this trial some graphic photos of body parts.  The question is whether you think you could see them and remain a fair and impartial juror."
>
> The juror: "Yes."
>
> The judge: "Do you have any other concerns about being a fair and impartial juror in a first degree murder prosecution?"
>
> The juror: "No, sir."

(Emphasis supplied.)

The judge conducted a sufficient colloquy with juror no. 226 to determine that he would not be a biased juror.  We therefore discern no error.

We have thoroughly reviewed the entire record in accordance with our duty under G. L. c. 278, § 33E, and decline to reduce the degree of guilt or order a new trial.  The defense that the Commonwealth did not meet its burden is without merit; the physical and eyewitness evidence against the defendant was overwhelming.  During closing argument and cross-examination, the defendant advanced theories about the police and medical examiner fabricating evidence and misidentifying the victim as his father.  Neither of these theories had any evidentiary support.

Given the transcription error, we conclude that the defendant should not be subject to the gatekeeper provision of G. L. c. 278, § 33E, for any issue that was not apparent from

the transcript and could only be discovered from the audio recording of the proceedings.

Judgment affirmed.